THE STATE OF KANSAS V. OLIVER SMITH.

No. 15,860.

SYLLABUS BY THE COURT.

MURDER—*Instruction as to Effect of Evidence—Mental Condition of Defendant—Illicit Intercourse by Deceased with Defendant's Daughter.* In a prosecution for murder, for the purpose of showing that the defendant was insane and not accountable for his action at the time of the admitted killing of the deceased, evidence was introduced that about three months prior to the tragedy he had been informed that his daughter was pregnant and that the deceased had accomplished her ruin under a promise of marriage. *Held,* that under the circumstances shown by all the evidence it was not error for the court to instruct the jury that such evidence was not to be considered for any other purpose than to determine the defendant's mental responsibility for the act.

Appeal from Shawnee district court; ALSTON W. DANA, judge. Opinion filed July 3, 1909. Affirmed.

*Fred S. Jackson,* attorney-general, and *J. J. Schenck,* county attorney, for The State.

*A. H. Case,* and *Joseph G. Waters,* for the appellant.

The opinion of the court was delivered by

SMITH, J.: The appellant was convicted of the crime of murder in the first degree in the district court of Shawnee county.

While under arrest he voluntarily made and signed a statement of the facts leading up to the tragedy and its consummation. This statement was offered and received in evidence over the objection of the appellant, and its admission is one of the errors assigned. There are some statements in the so-called confession relating to occurrences before and after the immediate trouble which led to the killing that should, and probably would, have been excluded if a request for their exclusion had been made. The only objection to the admission of the statement, however, ran to the document as a whole, and this objection was properly overruled.

Another assignment of error relates to the admission of the declarations of the deceased, which clearly appear to have been made *in extremis* and with consciousness of approaching death. These declarations are in accord with the evidence of several eye-witnesses to the tragedy and substantially in accord with the confession made by the appellant, except that they attribute the fatal knife-wound to the act of "Orville" Smith, whereas the so-called confession and the testimony of all the eye-witnesses give the name of the person who inflicted the blow as Oliver Smith. A dying declaration is but evidence, and may be impeached or overcome by other evidence as may any testimony in any case. (2 Wig. Ev. §§ 1033, 1446.)

Particular reliance for a reversal, however, seems to be placed upon the giving of an instruction which reads:

"Evidence has been admitted in this case for the purpose of showing that the deceased, Thomas Bair, had been criminally intimate with the daughter of the defendant and that he was responsible for her being pregnant with an unborn child. This evidence has been allowed to be introduced only for the purpose of throwing light upon the defendant's mental condition at the time of the alleged stabbing, and should be considered by you for no other purpose, and the court instructs you that the fact that the deceased, Thomas Bair, may have been criminally intimate with a daughter of the defendant would not justify the defendant in taking the life of Thomas Bair on account of such intimacy."

There was evidence, which was not contradicted, that about three months before the tragedy the appellant's wife had told him that their daughter was pregnant in the Crittenton Home, and that the deceased, Bair, was the author of her ruin, which he had accomplished under a promise to marry her. Excepting this report of the wife there was no evidence tending to prove that Bair was criminally intimate with the appellant's daughter, or even knew her, and there was no evidence that the appellant ever investigated the correctness of

the report or even spoke to Bair about it. In his so-called confession Smith himself said: "I have known Thomas Bair by sight for about two years. I did not know his name until last night. He knew me for some time, and when we would meet he would call me 'Ol' or 'Smith.'" He testified that the trouble arose over a game of cards, and that Bair grabbed up a dollar which belonged to him (Smith) and left the place where they were playing and went to another barroom; that he followed him, but went first to the meat-shop where he had been employed and got a package of meat and the knife with which the fatal wound was inflicted; that soon after entering the latter barroom he asked Bair if he was going to give him the dollar; that Bair replied in the negative and drew back his arm as if he would strike Smith, and said he would knock his head off; that thereupon he (Smith) struck Bair with a knife. In short, by his own account Smith made no reference to his daughter's trouble, nor did he give any indication that he even had that matter in his mind. This is also the effect of the testimony of all the other witnesses who were present. Under these circumstances it seems clear that the crime could not be reduced to manslaughter by reason of heat of passion excited by the report given to the appellant by his wife, or that the report should be considered as evidence for that purpose.

The court fully and properly instructed the jury as to the circumstances which would render the act excusable, and as to the degree of sanity which would render the defendant accountable or unaccountable for the act, and also, under proper instructions and definitions, submitted the question of the defendant's guilt or innocence of each of the two degres of murder and of all the degrees of manslaughter. The appellant seems to have had a fair trial, and to have been found guilty upon evidence which leads, beyond a reasonable doubt, to the conclusion at which the jury arrived.

The judgment is affirmed.